# EXHIBIT A

Loan Number [REDACTED]    Servicing Number: [REDACTED]    Date: 10/26/98

# NOTE

October 26, 1998                    DALLAS                     
[Date]                              [City]                      [State]

403  CLOWER STREET,   SAN ANTONIO, TX  78212
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.    $36,480.00   (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of    10.050%    .

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on    December 01, 1998    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    November 01    , 2028   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    Option One Mortgage Corporation
Department 7821  Los Angeles, CA  90084-7821   or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S.   $321.49    .

### (C) Application of Payments

Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If within    36 Months    from the date of execution of the Security Instrument I make a full prepayment or, in certain cases a partial prepayment, I will at the same time pay to the Note Holder a prepayment charge if authorized by state law. The prepayment charge will be equal to six (6) months advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this Note. Notwithstanding the foregoing, I will not be required to pay a prepayment charge to the Note Holder in connection with any prepayment made if the current interest rate is greater than either twelve percent (12%) for owner occupied property, or ten percent (10%) for non-owner occupied property. In no event will such a charge be made if it violates state or federal law.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   6.000%    of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may, except as otherwise required by applicable law, require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument.

### (C) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Loan Number: ███████   ● Servicing Number: ███████   ●   Date: 10/26/98

**(D) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS
I and any other person who has obligations under this Note waive, except as otherwise required by applicable law, notice of intention to accelerate and the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. SECURED NOTE
In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JUANA T FONSECA                                  -Borrower
SSN: ███████

_____ (Seal)
                                                 -Borrower
SSN:

_____ (Seal)
                                                 -Borrower
SSN:

_____ (Seal)
                                                 -Borrower
SSN:

_____ (Seal)
                                                 -Borrower
SSN:

_____ (Seal)
                                                 -Borrower
SSN:                                             *(Sign Original Only)*

TXNT0012 (06-19-98)

PAY TO THE ORDER OF

WITHOUT RECOURSE
ON _____ NOV 0 2 1998 _____
OPTION ONE MORTGAGE CORPORATION
A CALIFORNIA CORPORATION

BY: _____
CATHY STEIN ASSISTANT SECRETARY

# EXHIBIT B

WHEN RECORDED MAIL TO:

OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57076
IRVINE, CA 92619-7076
ATTN:  QUALITY CONTROL

98- 0191528

Loan Number:
Servicing Number:

[Space Above This Line For Recording Data]

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on          October 26, 1998
The grantor is
JUANA TREVINO  FONSECA, A UNMARRIED PERSON
also known as Juana T. Fonseca

("Borrower"). The trustee is          Everett L. Anschutz, Jr          , whose address is
     2425  W. Loop South, Ste. 800,  Houston, Texas 77027          ("Trustee").
The beneficiary is
     OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION
which is organized and existing under the laws of          CALIFORNIA          , and whose address is
          3 Ada, Irvine, CA  92618          ("Lender").
Borrower owes Lender the principal sum of
THIRTY SIX THOUSAND FOUR HUNDRED EIGHTY
          ... AND NO/100THs     Dollars (U.S. $36,480.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on     November 01, 2028  .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably
grants and conveys to Trustee, in trust, with power of sale, the following described property located in
          Bexar          County, Texas:

096310000140

LOT 14, NEW CITY BLOCK 9631, AUDUBON ADDITION, IN THE CITY OF SAN
ANTONIO, BEXAR COUNTY, TEXAS, ACCORDING TO PLAT THEREOF RECORDED IN
VOLUME 2575, PAGE 75, DEED AND PLAT RECORDS
OF BEXAR COUNTY, TEXAS.

which has the address of     403  CLOWER STREET, SAN ANTONIO

Texas          78212               ("Property Address");          [Street, City],
          [Zip Code]

VOL 7688 PG 1292

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the
right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

**TEXAS-Single Family**
Page 1 of 8                                        TXD10011 (06-10-98)



Loan Number: ███████     Servicing Number: ██████     Date:10/26/98

COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

TXD10012 (06-10-98)

VOL 7688 PA 1293

Loan Number: ████████      Servicing Number: ████████      Date: 10/26/98

If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower warrants and represents that he/she shall either (1) occupy and establish and use the property as the Borrower's principal residence or (2) shall be the only occupant of the property. In the event the Borrower ceases to either maintain the property as the primary residence or the Borrower ceases to occupy the residence (irrespective of whether the property is maintained as the primary residence) Borrower shall be subject to all of the remedies set forth in the Occupancy Rider attached hereto. The remedies for the Occupancy Rider shall be in addition to the remedies set forth herein.

Borrower shall not destroy, damage or impair the Property, allow the property to deteriorate, or commit waste on the property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender or Trustee with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

VOL 7688 PG 1294

Loan Number: ████████         Servicing Number: ████████         Date: 10/26/98

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall

Loan Number: █████████          Servicing Number: █████████          Date: 10/26/98

be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its

VOL 7688 PG 1296

Loan Number: ███████   Servicing Number: ███████   Date: 10/26/98

directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances:  gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. If any installments under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other deed of trust or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance.  In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law.  Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the poser of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law.  Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law.  Sale shall be made at public venue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month.  Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines.  Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty.  Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitles to it.

If the Property is sold pursuant to this paragraph 21, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale.  If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23. Substitute Trustee. Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

24. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

25. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

26. Waiver of Notice of Intention to Accelerate. Borrower waives the right to notice of intention to require immediate payment in full of all sums secured by this Security Instrument except as provided in paragraph 21.

TXD10016 (06-10-98)

VOL 7688 PG 1297

Loan Number: ▮▮▮▮▮▮▮▮        Servicing Number: ▮▮▮▮▮▮▮▮        Date: 10/26/98

**27. Misrepresentation and Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable. To the extent permitted by applicable law, Trustee, upon presentation to it of an affidavit signed by Lender setting forth facts showing a default by Borrower under this paragraph, is authorized to accept as true and conclusive all facts and statements therein, and to act thereon hereunder.

**28. Time is of the Essence.** Time is of the essence in the performance of each provision of this Security Instrument.

**29. Waiver of Statute of Limitations.** The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

**30. Modification.** This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**31. Reimbursement.** To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

**32. Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

**33. Lost Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

**34. Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

**35. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

- ☐ Adjustable Rate Rider
- ☐ Condominium Rider
- ☐ 1-4 Family Rider
- ☐ No Prepayment Penalty Option Rider
- ☐ Planned Unit Development Rider
- ☒ Occupancy Rider
- ☐ Other(s) (specify)

VOL 7688 PG 1298

Loan Number: ███████         Servicing Number: ███████         Date: 10/26/98

**36. Purchase Money; Vendor's Lien; Renewal and Extension. [Complete as appropriate]**
Vendor`s Lien:  The Note secured hereby is primarily secured by the
Vendor`s Lien retained in the Deed of even date herewith conveying
the Property to Borrower, which Vendor`s Lien has been assigned to
Lender, this Deed of Trust being additional security therefor.

        BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Juana T. Fonseca_____(Seal)          _____(Seal)
JUANA T FONSECA            -Borrower                                 -Borrower

_____(Seal)          _____(Seal)
                          -Borrower                                 -Borrower

_____(Seal)          _____(Seal)
                          -Borrower                                 -Borrower


**STATE OF TEXAS,**              **Bexar County ss:**

        BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally
appeared      JUANA T. FONSECA

                                                                        , known to me
to be the person(s) whose name(s)    is          subscribed to the foregoing
instrument, and acknowledged to me that    she    executed the same for the purposes and
consideration therein expressed.
        GIVEN UNDER MY HAND AND SEAL OF OFFICE, this    26th  day of   October        ,
  1998

KELLI ONDREJ
Notary Public, State of Texas
My Commission Expires 01-10-2002

_Kelli Ondrej_
Notary Public

VOL 6889 PG 1299

Page 8 of 8                                        TXD10018 (06-10-98)

Loan Number: ███████          Servicing Number: ████████     ⬤     Date: 10/26/98

# OCCUPANCY RIDER
### PRIMARY RESIDENCE - TEXAS

THIS OCCUPANCY RIDER is made          October 26, 1998          , and is incorporated into and amends and supplements the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's note to

OPTION ONE MORTGAGE CORPORATION, A CALIF. CORPORATION
(the "Lender") of the same date (the "Note") and covering the property described in the Security Instrument and located at

403  CLOWER STREET,  SAN ANTONIO, TX 78212
(Property Address)

## OCCUPANCY AGREEMENTS
In addition to the covenants and agreements made in the Security Instrument, Borrower further covenants and agrees as follows:

1.    Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary residence. Lender makes non-owner residence loans on different terms.

2.    The Borrower desires Lender to make this loan to Borrower.

3.    Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary residence and that Borrower will so occupy, and continue to occupy, this property as its sole primary residence commencing upon the execution of this Security Instrument.

4.    If Borrower breaches this promise to occupy the property as Borrower's primary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument:
A.    Declare all sums secured by the Security Instrument due and payable and exercise the Power of Sale;
B.    Decrease the term of the loan and adjust the monthly payments under the Note accordingly;
C.    Increase the interest rate and adjust the monthly payments under the Note accordingly;
D.    Require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

## CONFLICTING PROVISIONS
Borrower agrees that if the provisions of this Rider conflict with the printed terms in the Security Instrument and/or the Note, then the provisions of this Rider will control.

## TERMINATION OF AGREEMENT
If the Security Instrument is assigned to another lender, this Rider may, at the option of the assignee, be terminated.

VOL 7688 PG 1300

**TEXAS OCCUPANCY RIDER - Primary Residence**
Page 1 of 2

TXRI0011 (02-02-98)

Loan Number: ▓▓▓▓▓    Servicing Number: ▓▓▓▓▓    ●    Date: 10/26/98

IN WITNESS WHEREOF, Borrower has executed this Occupancy Rider.

_Juana T Fonseca_
_____
JUANA T FONSECA

_____    _____

_____    _____

_____    _____

State of _____ Texas _____, County of ____ Bexar ____}SS:
On _____ October 26, 1998 _____ before me, the undersigned, a Notary Public
in and for said State, personally appeared _____ JUANA T. FONSECA _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed
the instrument.

Witness my hand and official seal.    Signature _Kelli Ondrej_
(Reserved for official seal)          _____
                                      Name (typed or printed)

KELLI ONDREJ
Notary Public, State of Texas
My Commission Expires 01-10-2002    My commission expires: _____

RECORDER'S MEMORANDUM
AT THE TIME OF RECORDATION, THIS
INSTRUMENT WAS FOUND TO BE INADEQUATE
FOR THE BEST PHOTOGRAPHIC REPRODUCTION
BECAUSE OF ILLEGIBILITY, CARBON OR
PHOTO COPY, DISCOLORED PAPER, ETC.

Any provision herein which restricts the sale, rental, or use of the described
real property because of race is invalid and unenforceable under Federal law.
STATE OF TEXAS, COUNTY OF BEXAR
I hereby certify that this instrument was FILED in File Number Sequence on
the date and at the time stamped hereon by me and was duly RECORDED in
the Official Public Record of Real Property of Bexar County, Texas on:

OCT 30 1998

_Gary Rickhoff_
COUNTY CLERK BEXAR COUNTY, TEXAS

Filed for Record in:
BEXAR COUNTY, TX
GERRY RICKHOFF, COUNTY CLERK

On Oct 28 1998

At 3:55pm

Receipt #:       173103
Recording:        21.00
Doc/Mgmt :         6.00

Doc/Num  : 98- 0191528

Deputy -Suzanne Ybarra

VOL 7688 PG 1301

TEXAS OCCUPANCY RIDER-Primary Residence
Page 2 of 2                                    TXRI0012 (02-02-98)

# EXHIBIT C

**Doc# 20200011899 01/17/2020 1:05PM Page 1 of 3 Lucy Adame-Clark, Bexar County Clerk**

Recording Requested By:
PHH MORTGAGE CORPORATION

When Recorded Return To:

PHH MORTGAGE CORPORATION
1795 INTERNATIONAL WAY
IDAHO FALLS, ID  83402

███████████████████████

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**Bexar, Texas**
**SELLER'S SERVICING** ██████████ "FONSECA"
**SELLER'S LENDER ID#:** ████

Date of Assignment: 01/08/2020
Assignor: SAND CANYON CORPORATION FKA OPTION ONE MORTGAGE CORPORATION at  C/O PHH MORTGAGE CORPORATION, 5720 PREMIER PARK DRIVE, WEST PALM BEACH, FL 33407
Assignee: WELLS FARGO BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION (FORMERLY KNOWN AS NORWEST BANK MINNESOTA, NATIONAL ASSOCIATION) AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 1999-A, ASSET-BACKED CERTIFICATES, SERIES 1999-A at C/O PHH MORTGAGE CORPORATION, 5720 PREMIER PARK DRIVE, WEST PALM BEACH, FL 33407

Executed By: JUANA TREVINO FONSECA, A UNMARRIED PERSON ALSO KNOWN AS JUANA T. FONSECA  To: OPTION ONE MORTGAGE CORPORATION
Date of Deed of Trust: 10/26/1998 Recorded:  10/28/1998  In Book/Reel/Liber: 7688 Page/Folio: 1292 as Instrument No.: 98-0191528  In the County of Bexar, State of Texas.

Property Address: 403 CLOWER STREET, SAN ANTONIO, TX  78212
Legal Description: As Referenced on Original Recorded Document

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $36,480.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Deed of Trust.

   TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust.  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

   SAND CANYON CORPORATION FKA OPTION ONE MORTGAGE CORPORATION
On 01/08/2020

By: _____
Beverly Clayton
Vice President

*JJG*JJ3GMAC*01/07/2020 10:00:21 AM* GMAC40GMACA00000000000000005526692* TXBEXAR* 8013008589 TXSTATE_TRUST_ASSIGN_ASSN *JJG*JJ3GMAC*

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF FLORIDA
COUNTY OF PALM BEACH

On 01/08/2020, before me, _____**Toni A. Kentoffio**_____ , a Notary Public in and for PALM BEACH in the State of FLORIDA, personally appeared Beverly Clayton, Vice President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

**Toni A. Kentoffio**
Notary Expires: ||\\60S00\|||

Notary Public State of Florida
Toni A Kentoffio
My Commission GG 164344
Expires 11/30/2021

(This area for notarial seal)

*JJG*JJ3GMAC*01/07/2020 10:00:21 AM* GMAC40GMACA0000000000000005526692* TXBEXAR* 8013008589 TXSTATE_TRUST_ASSIGN_ASSN *JJG*JJ3GMAC*

**File Information**

**eFILED IN THE OFFICIAL PUBLIC eRECORDS OF BEXAR COUNTY**
**LUCY ADAME-CLARK, BEXAR COUNTY CLERK**

| | |
|---|---|
| **Document Number:** | 20200011899 |
| **Recorded Date:** | January 17, 2020 |
| **Recorded Time:** | 1:05 PM |
| **Total Pages:** | 3 |
| **Total Fees:** | $30.00 |

**\*\* THIS PAGE IS PART OF THE DOCUMENT \*\***

**\*\* Do Not Remove \*\***

Any provision herein which restricts the sale or use of the described real property because of race is invalid and unenforceable under Federal law

STATE OF TEXAS, COUNTY OF BEXAR

I hereby Certify that this instrument was eFILED in File Number Sequence on this date and at the time stamped hereon by me and was duly eRECORDED in the Official Public Record of Bexar County, Texas on: 1/17/2020 1:05 PM



Lucy Adame-Clark
Bexar County Clerk

# EXHIBIT D

PHH Mortgage Services
PO Box 9117
Temecula, CA  92589-9117



PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

9314 7100 1170 1043 6047 87

**RETURN RECEIPT REQUESTED**

Send Payments to:
PHH Mortgage Services
1 Mortgage Way
Mail Stop SV19
Mt Laurel, NJ 08054

20200721-206

Send Correspondence to:
PHH Mortgage Services
P.O. Box 5452
Mt Laurel, NJ 08054

JUANA T FONSECA
403 CLOWER
SAN ANTONIO, TX 78212-1535

# If you are experiencing a hardship as a result of COVID-19, please contact us immediately at 1-800-936-8705 or covid19assistance@mortgagefamily.com or via https://www.mortgagequestions.com/coronavirus so we can review your available options.



XC218{CM}

Case 5:21-cv-00056-DAE   Document 1-1   Filed 01/22/21   Page 22 of 28



**NewRez**

C/O PHH Mortgage Services
1 Mortgage Way
Mt. Laurel NJ 08054

Tel: (888) 820-6474
Fax: (856) 917-8300

---

07/21/2020

JUANA T FONSECA
403 CLOWER
SAN ANTONIO, TX 78212-1535

Account Number: ▮▮▮▮▮▮▮

Sent Via Certified Mail™ with Return Receipt
9314 7100 1170 1043 6047 87

Property Address:
403 CLOWER
SAN ANTONIO, TX 78212

## <u>NOTICE OF DEFAULT</u>

### <u>AVISO IMPORTANTE PARA PERSONAS QUE HABLAN ESPAÑOL</u>

Esta notificación es de suma importancia. Puede afectar su derecho a continuar viviendo en su casa. Si no entiende su contenido, obtenga una traducción inmediatamente o contáctenos ya que tenemos representantes que hablan español y están disponibles para asistir.

Dear Customer(s),

### <u>SPECIAL NOTICE IN THE EVENT YOU HAVE FILED BANKRUPTCY</u>

If you have received an Order of Discharge in a Chapter 7 case filed under the Bankruptcy Code of the United States, this Notice is not intended as an attempt to collect any debt from you personally. If you have received an Order of Discharge in a Chapter 11, 12 or 13 bankruptcy case, this Notice is not an attempt to collect a pre-petition debt pursuant to a completed and confirmed Bankruptcy Plan. If the foregoing applies to you, this Notice is sent to you only as a preliminary step to an "In Rem" foreclosure on the mortgage against the above-referenced property. Provisions may be contained within the mortgage/deed of trust that require notice prior to foreclosure. As such, this is not an attempt to assert that you have any personal liability for this debt contrary to any entered Bankruptcy Order of Discharge.

In addition, if you have recently filed a petition under the Bankruptcy Code, this Notice has been sent to you because we have not been notified of your bankruptcy case. If the foregoing applies to you, it is **IMPORTANT** that you or your bankruptcy attorney contact us immediately and provide us with the following information: date and jurisdiction of your filing, your case number and the bankruptcy chapter number under which you have filed.

---

www.MortgageQuestions.com

XC218

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*



Page 1 of 4

9314 7100 1170 1043 6047 87



**NewRez**

C/O PHH Mortgage Services                        Tel: (888) 820-6474
1 Mortgage Way                                   Fax: (856) 917-8300
Mt. Laurel NJ 08054

---

Mortgage payments on the above referenced account are past due, which has caused a default under the terms of the Mortgage or Deed of Trust (hereinafter, "Security Instrument"). As of 07/21/2020, the following amounts are past due:

| | | |
|---|---|---|
| Next Payment Due Date: | | 06/01/2020 |
| Total # of Monthly Payments Due: | | 2 |
| Total Monthly Payments Due: | | $742.88 |
| Late Charges: | | $87.42 |
| Other Charges: | Fees/Expenses: | $0.00 |
| | Uncollected NSF Fees: | $0.00 |
| | Unapplied Balance: | ($0.00) |
| **TOTAL YOU MUST PAY TO CURE DEFAULT:** | | **$830.30** |

This amount represents the total amount required to bring the account current as of the date of this letter. If other amounts are advanced on the account or if the next payment due date occurs on or before the submission of the total amount required to cure the default, those amounts will remain on the account until paid.

In order to cure the default, payment for the entire total amount past due, plus any amount(s) becoming due in the interim, must be received on or before 08/25/2020, via the addresses or methods listed on the payment remittance information section included in this notice.

Failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. Upon acceleration, the total obligation will be immediately due and payable without further demand. In foreclosure proceedings, we are entitled to collect the total arrearage in addition to any expenses of foreclosure, including, but not limited to, reasonable attorney's fees and costs unless restricted by Texas law. A borrower has the right to reinstate the loan after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale.

If the account is not brought current in a timely manner, it will result in our election to exercise our right to foreclose on the property. Upon acceleration, the total obligation will be immediately due and payable without further demand. In foreclosure proceedings, we are entitled to collect the total arrearage in addition to any expenses of foreclosure, including but not limited to reasonable attorney's fees and costs. If the account has already been accelerated and foreclosure proceedings already begun, we will continue the foreclosure action if possible. A borrower has the right to assert in court, the non-existence of a default or any other defense to acceleration and foreclosure.

We will work with bankruptcy lawyers, foreclosure defense lawyers, housing counselors, and other authorized representatives of our customers. However, we will only release information once proper **written authorization** has been obtained, as required by law.

After acceleration of the account, but prior to foreclosure, the mortgage account may be reinstated, depending on the terms of the note and mortgage, any payments received and/or any relevant prior court order. We encourage a

---

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*

                         9314 7100 1170 1043 6047 87



C/O PHH Mortgage Services
1 Mortgage Way
Mt. Laurel NJ 08054

Tel: (888) 820-6474
Fax: (856) 917-8300

---

thorough review of the provisions of the mortgage and supporting documents. Please be aware, after acceleration of the account, there may be expenses and attorney's fees and costs incurred by us to enforce the terms of the mortgage agreement in addition to the overdue amount on the mortgage. Any payment to reinstate the mortgage account after acceleration, must therefore include an amount sufficient to cover such expenses and fees incurred. Payments received less than the amount required to reinstate the mortgage account may be returned, and may not stop any foreclosure proceedings already begun on the Property. If certain amounts are not collected to reinstate the loan, then those amounts are not waived and will remain due on the account until paid.

In addition, a U.S. Department of Housing and Urban Development ("HUD") counseling agency may be able to provide assistance. To locate the HUD-approved counseling agency, call the HUD Housing Counseling Service at 800.569.4287 or consult HUD's website at www.HUD.gov.

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

**Attention Servicemembers and Dependents:** Servicemembers on "active duty" or "active service", or a spouse or dependent of such a service member, may be entitled to certain legal protections under the federal Servicemembers Civil Relief Act (50 U.S.C. App.§§ 3901) ("SCRA") regarding the service member's interest rate and foreclosure protections. SCRA and certain state laws provide important protections for you. If you are currently in the military service, or have been within the last twelve (12) months, please notify PHH Mortgage Services immediately. Servicemembers and dependents with questions about SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php. Military OneSource is the U.S. Department of Defense's information resource. If you are listed as entitled to legal protections under SCRA, please go to www.militaryonesource.mil/legal or call 800.342.9647 (toll-free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website. Homeowner counseling is also available at HUD-certified housing counselors http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm).

If the account cannot be brought current, we can discuss possible alternatives to foreclosure.

We want to assist to remedy this situation. PHH Mortgage Services  would like to present some of the alternatives that might be available regarding the delinquent mortgage account. While our primary objective is the collection of past due amounts on the account, we want to work to find the best available alternative to bring the mortgage account obligation current.

We are here to help! ALFREDO JR.  AYENTO has been assigned as the account Relationship Manager and will be the designated representative for inquiries and submission of documents. ALFREDO JR.  AYENTO is available toll-free at 888.820.6474 Monday through Friday  8:00 AM to 9:00 PM ET. If the assigned Relationship Manager is unavailable to take the call, the call will be automatically transferred to a different Relationship Manager who will be able to assist. You can also visit our website www.MortgageQuestions.com.

---

www.MortgageQuestions.com                                                                                      XC218

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*



9314 7100 1170 1043 6047 87



C/O PHH Mortgage Services
1 Mortgage Way
Mt. Laurel NJ 08054

Tel: (888) 820-6474
Fax: (856) 917-8300

Sincerely,
Loan Servicing

**ADDRESS WRITTEN CORRESPONDENCE TO:**
PHH Mortgage Services
Attn Research Department
Post Office Box 66002
Lawerenceville NJ, 08648

## Payment Remittance Information

| Payment Methods | |
|---|---|
| Always include the account number with the payment. Make checks payable to PHH Mortgage Services. | |
| MoneyGram® <br> Receive Code: ▮ <br> City: Mount Laurel <br> State: NJ <br> Account: ▮ <br> Payable to: PHH Mortgage Services | **Regular Mail** <br> PHH Mortgage Services <br> P.O.Box 94087 <br> Palatine, IL 60094-4087 |
| Western Union Quick Collect <br> Code City: PHHUS <br> State: NJ <br> Reference: Account: ▮ | **Overnight Mail** <br> PHH Mortgage Services <br> Attn: PO box 94087 <br> 5505 N. Cumberland Ave, Suite 307 <br> Chicago, IL 60656 |
| Pay online: Log in to www.MortgageQuestions.com to make a payment. | |

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*

Page 4 of 4                                        9314 7100 1170 1043 6047 87

# EXHIBIT E

Mackie Wolf Zientz & Mann, P.C.
PO Box 9077
Temecula, CA  92589-9077

Send Correspondence to:
Mackie Wolf Zientz & Mann, P.C.
14160 North Dallas Parkway
Suite 900
Dallas, TX  75254

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

9307 1100 1170 1053 1470 74

20210107-89

JUANA TREVINO FONSECA
403 CLOWER
SAN ANTONIO, TX 78212-1535



ACC4

# MACKIE WOLF ZIENTZ & MANN, P.C.

ATTORNEYS AT LAW
PHONE (214) 635-2650  FAX (214) 635-2686

PARKWAY OFFICE CENTER, SUITE 900
14160 DALLAS PARKWAY
DALLAS, TEXAS 75254
*PLEASE RESPOND TO DALLAS OFFICE

UNION PLAZA
124 WEST CAPITOL, SUITE 1560
LITTLE ROCK, ARKANSAS 72201

20-000416-671-1
January 7, 2021
CERT MAIL
JUANA TREVINO FONSECA ALSO KNOWN AS JUANA T. FONSECA
403 CLOWER
SAN ANTONIO, TX 78212

RE:     Loan No.: ███████
        MWZM No. 20-000416-671-1

## NOTICE OF ACCELERATION OF LOAN MATURITY

Dear JUANA TREVINO FONSECA,

We have been retained by PHH MORTGAGE CORPORATION, Mortgage Servicer for WELLS FARGO BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION (FORMERLY KNOWN AS NORWEST BANK MINNESOTA, NATIONAL ASSOCIATION) AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 1999-A, ASSET-BACKED CERTIFICATES, SERIES 1999-A, the current Mortgagee of the Note and Deed of Trust related to the above referenced loan. A servicing agreement between the Mortgagee, whose address is:

WELLS FARGO BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION (FORMERLY KNOWN AS NORWEST BANK MINNESOTA, NATIONAL ASSOCIATION) AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 1999-A, ASSET-BACKED CERTIFICATES, SERIES 1999-A
C/O PHH MORTGAGE CORPORATION
1MORTGAGE WAY MAIL STOP SV-22
MT. LAUREL, NJ 08054

and the Mortgage Servicer authorizes the Mortgage Servicer to collect the debt. We have been employed by our client to represent it in collecting the indebtedness and enforcing the Deed of Trust.

A default occurred under the terms of the Note. Notification was sent that default had occurred in the payment of the Note and that PHH MORTGAGE CORPORATION would accelerate the maturity of the Note if you did not cure the default. Because of your failure to cure the default, the maturity date of the Note was accelerated effective 12/30/2020.

All unpaid principal and accrued interest on the Note are due and payable at this time. According to the Mortgage Servicer's records, the total balance due as of the date of this notice is $25,148.62. As a result of accrued interest and other charges, the total balance due may be greater on the date of your payment and an adjustment may be required to fully pay off the loan. You may obtain the precise amount due by contacting this firm at **(214) 635-2650**. Payment must be made by cashier's check, certified check or money orders.

Federal law allows you to dispute the validity of the debt, or any portion thereof, within thirty days (30) after receipt of this notice. If you do not, the debt will be assumed valid by the firm. If you notify the firm in writing within thirty days of receipt of this letter that the debt or any portion of the debt is disputed, the firm will obtain verification of the debt and will mail a copy of the verification to you. On your written request, within the thirty-day period for verification, the firm will provide you with the name and address of the original creditor. Additionally, all obligors and guarantors have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and foreclosure.

If this debt has been discharged in bankruptcy or you are not obligated on this debt, the Mortgage Servicer is not attempting to collect this debt from you personally.

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT AND ANY INFORMATION OBTAINED BY IT WILL BE USED FOR THAT PURPOSE.**

Sincerely yours,

Mackie Wolf Zientz & Mann, P.C.

